IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | | Case No. 3:20-cr-105 |
| Plaintiff | : | |
| | | Judge Michael J. Newman |
| vs. | : | |
| | | THE UNITED STATES' |
| **DARYL ROBERT HARRISON, (1)** | : | SENTENCING MEMORANDUM |
| | | |
| Defendant. | : | |

_____

Now comes the United States by and through the undersigned counsel with its Sentencing Memorandum in the above captioned case.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

s/Dwight K. Keller
DWIGHT K. KELLER (0074533)
Assistant United States Attorney
Attorney for Plaintiff
Federal Building
200 West Second Street, Suite 600
Dayton, Ohio 45402
(937) 225-2910
Fax: (937) 225-2564
Dwight.Keller @usdoj.gov

1

## STATEMENT OF THE CASE

On September 22, 2020, the Grand Jury returned a 16-Count Indictment against the defendant **DARYL ROBERT HARRISON**, and his codefendant stepfather Robert Shelly Harrison, Jr. (Doc. #3). Count 1 alleges conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §1349; Counts 2 - 4 allege mail fraud in violation of 18 U.S.C. §1341; Counts 5 - 13 allege wire fraud in violation of 18 U.S.C. §1343; and Counts 14 -16 allege witness tampering in violation of 18 U.S.C. §1512(b)(3). On October 7, 2020, the Defendant was arraigned before then U.S. Magistrate Judge Michael J. Newman. At said hearing, the defendant was granted bond with certain conditions attached, to include: (1) not violate any federal, state or local law while on release; (2) report immediately to Pretrial Services every contact with law enforcement personnel, including arrests, questioning or traffic stops; (3) continue to actively seek employment; (4) not leave the District of Colorado without prior approval of Pretrial Services; and (5) avoid any direct or indirect contact with victims or potential witnesses involved in the investigation/prosecution of subject case. (Doc. #11). On September 23, 2021, the Government filed a Motion to Revoke the Defendant's Pretrial Release. (Doc. #46). On September 28, 2012, and October 1, 2021, the Court convened evidentiary hearings concerning the Government's Motion to Revoke Defendant's Pretrial Release. At said hearings, the Court heard sworn testimony from Ed Gaddon, the Defendant's District of Colorado Pretrial Service Officer; and the Government's Case Agent - U.S. Secret Service Senior Special Agent James R. Teuschl. On October 1, 2021, the Court issued an Order revoking the Defendant's bond. (Doc. #47). On October 6, 2021, the Court issued an Order directing the Defendant's removal from the District of Colorado and return to the Southern District of Ohio (SDOH). (Doc. #50). On November 10, 2021, the U.S. Marshals Service physically delivered the Defendant to the SDOH wherein he

was placed in the Butler County, Ohio Jail. The Defendant made two subsequent motions for review of his pretrial detention on November 23, 2021 (Doc. #54) and February 16, 2022 (Doc. #60). The Court denied both motions respectively on December 1, 2021 (Doc. #58) and March 1, 2022 (Doc. #63).

A jury trial commenced on September 6, 2022. (Doc. #81). Following a nine day trial, the Defendant was convicted of Counts 1, 2, 5, 7, 8, 9, 11, 12, 13 and 16 of the Indictment. (Doc. #96). On December 5, 2022, the U.S. Probation Office published its initial draft of the Presentence Investigation Report (PSR). After receiving comments, objections and proposed edits from both parties, the final draft of the PSR was published on January 17, 202,.

## STATEMENT OF THE FACTS

The Defendant conspired to steal and otherwise misappropriate in excess of $800,000 in victim/investor funds obtained from at least 14 victims. Each investor contributed varying amounts of money to the fraud scheme. "P.B." invested in excess of $500,000, while "B.K." invested in excess of $100,000. The Defendant's fraud scheme encouraged individuals to invest in various African gold, diamond and chromium mining operations he claimed to be associated with. Each of these overseas businesses were supposedly owned and operated by a Ghana-based entity known as *Newmax, Ltd*.

As part of the Defendant's *modus operandi,* he solicited prospective investors at local Starbucks Coffee Shops, IHOP Restaurants, Kroger Grocery Stores, carwashs, and fitness centers. Between October 2014 and November 2017, the Defendant and his step-father collaborated in opening three separate bank accounts into which investors' funds were deposited and cash subsequently withdrawn. The Defendant used these cash withdrawals to fund his extravagant life style, overseas travel expenses, the purchase of luxury automobiles and other miscellaneous

expenses related to the operation of his religious street ministry known as *the Power House of Prayer* ("PHOP").

As part of the Defendant's fraud scheme, he materially misrepresented that he was a Ghanian Prince, that he had connections to African diamond and gold mines that would generate returns to investors ranging from 28-33%; that his proffered investments were guaranteed to be secure, and any and all principal amounts would be returned to investors upon demand, (with certain specified caveats). The Defendant provided most investors with written contracts that were confusing at best, and indecipherable at worst. No promised periodic statements or interest statements were ever provided to any investors. The Defendant served as the "brains" of the scheme, while his step-father acted as the conspiracy's "*defacto* banker".

The Defendant and his step-father held themselves out as religious ministers of a Dayton, Ohio street ministry known as PHOP. The Defendant additionally professed to be both a modern day "Prophet". During the trial, a number of witnesses testified that the PHOP was a religious cult, similar in many ways to the infamous Jim Jones or David Koresh groups. In October 2019, the Defendant re-located the PHOP from Dayton, Ohio to Parker, Colorado. A number of middle-aged female parishioners followed the Defendant in his pilgrimage out west to remain close to the Defendant and his PHOP ministry. Four of these women shared a rented residence in the Parker, CO area, supporting themselves by working as house cleaners and fast food restaurant employees.

The PSR lays out in more detail the Defendant's relevant offense conduct. PSR ¶¶ 11-32.

On December 29, 2022, defense counsel submitted written objections to the initial draft of the PSR. In this letter he objected to only three victim restitution claims of "T.P.", R.D." and "T.M.". The Government has subsequently contacted each of these three victims, and each have withdrawn their respective restitution claims. As such the remaining nine (9) restitution claims

consist of: "P.B." - ($526,000); "Z.K." – ($31,450); "D.R." – ($14,000); "A.R." – ($47,000); "A.Z." – ($9,400); "B.K." – ($183,000); "H.H." – ($42,238.78); "M.N." – ($1,000); and "N.V." – ($500) as described in PSR ¶ 128 are each deemed uncontested by the parties and should therefore be imposed against the Defendant in the total amount of $854,588.78 pursuant to 18 U.S.C. § 3663A.

## LAW AND ARGUMENT

I. **SENTENCING**

    A. **A Guidelines Sentence is a Presumptively Reasonable Designed to Achieve the Objectives of 18 U.S.C. § 3553(a).**

The Sentencing Guidelines are considered merely advisory in federal courts. United States v. Booker, 543 U.S. 220 (2005). See also, United States v. Ibarra-Hernandez, 427 F. 3d 332 (6th Cir. 2005). District courts enjoy enhanced discretion in fashioning appropriate sentences for criminal defendants. United States v. Jackson, 408 F. 3d 301, 304 (6th Cir. 2005). Booker, requires an acknowledgment by the district court of the defendant's applicable Guidelines range as well as a discussion of the reasonableness of any variation from that range. Jackson at 305. Ultimately, Booker requires sentences imposed by the district court to be reasonable. Id. at 304.

In Rita v. United States, 551 U.S. 338 (2007), the Supreme Court held that courts of appeals may apply a presumption of reasonableness in reviewing sentences handed down within the properly calculated Guidelines range. Id. at 347.

    B. **Current Sentencing Practice**

In imposing sentences post-Booker, district courts are required to independently evaluate each of the 18 U.S.C. § 3553(a) factors. The advisory sentencing Guidelines calculation is but one of these factors. The district court is tasked with imposing a sentence *sufficient, but not greater than necessary* consistent with the 18 U.S.C. § 3553(a) factors of sentencing. Congress has directed that there be no limits placed on the information parties can introduce concerning a

5

Defendant's background, character, and conduct prior to arriving at an appropriate sentence in a case. *See* 18 U.S.C. § 3661.

    **C.**    **The Sentencing Guideline Range in This Case.**

In subject case, the PSR determined the Defendant has a criminal history category of III, and a total offense level of 31. PSR ¶¶ 65, 74. As such, the PSR calculated the Defendant's advisory Guideline range to be 135-168 months. PSR ¶ 112.

**II.**    **ANALYSIS OF THE SENTENCING FACTORS**

**A.**    **18 U.S.C. § 3553(a) (1): The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.**

    **1.**    **Nature and Circumstances of Offense**.

The offenses of conviction spanned a 6 ½ year time frame as set forth in Count 1 of the Indictment. The Defendant targeted vulnerable and otherwise emotionally insecure individuals who were ill-informed in the esoteric world of international investments. He facilitated his fraud crimes by portraying himself as an experience international investment expert, religious minister and African Prince. He fraudulently and deceptively abused these perceived positions of trust, privilege and status to groom and convince potential victims into investing money into his bogus fraud scheme. As his overall fraud scheme began to unravel, he proceeded to obstruct justice by actively impeding one or more of his victims from contacting law enforcement authorities. Each of the Defendant's fraud crimes were committed in a cold, calculated and premeditated fashion. The Defendant's crimes reflect a pattern whereupon he preyed upon weak, gullible and overally trusting personality types. Criminals such as the Defendant commonly experience extreme difficulty learning from past mistakes and crimes.

    **2.**    **History and Characteristics of the Defendant.**

The Defendant is presently 44 years old having been born in Dayton, OH on March 23, 1978. PSR ¶ 78. He graduated from Centerville High School in 1996 with an overall grade point

average of 1.248. PSR ¶ 99. He purportedly claims to have completed some college course work at Sinclair Community College and various other institutions. PSR ¶¶ 99-101. He was previously employed as a youth minister in Lima, Ohio, at PHOP, at New Max, LLC and at a concrete/asphalt contractor located in Denver, Colorado. PSR ¶¶ 102, 104-06. The Defendant has been married to his current wife Stephanie for the last 12 years. PSR ¶ 85. The couple have six children. PSR ¶ 87. The Defendant had two prior marriages, the first of which produced two children, both of which are now adults. PSR ¶ 81.

Objectively, the Defendant displays the classic characteristics of an extremely self-centered, self-possessed sociopath who has no respect for societal rules or norms, and further lacks any empathy or sympathy for his victims. He typically intimidated and threatened his victims to establish and maintain control over them. To date, he has yet to display any regret, remorse or shame for the serious financial harm caused to his victims. Throughout his adult life, the Defendant engaged in a never ending pattern of manipulation, deceit, lies and controlling behavior in his business, religious and personal life. In summary, this Defendant sincerely believes and acts as if normal everyday societal rules do not apply to him.

        3.        **Defendant's Criminal History**

The Defendant's prior criminal history is documented in detail in the PSR. (*See* PSR ¶¶ 67-72). In 2008, he was convicted of disorderly conduct in the Warren County Municipal Court. PSR ¶ 67. Two months later, he was convicted of violating a protection order in Kettering Municipal Court. PSR ¶ 68. In 2009, he was convicted of attempting to obstruct official business in the Warren County Municipal Court. PSR ¶ 69. In 2013, he was convicted in the Montgomery County Common Pleas Court of a another investment fraud scheme that was shockingly similar to the subject case. PSR ¶ 71. In that case, he was specifically convicted of one count of aggravated theft ($100,000) and two counts of grand theft ($5,000) PSR *Id*. The Court in that case placed

the Defendant on 5 years of probation and ordered him to pay $153,500 in restitution to three separate victims he defrauded. *Id.* It was in this case, that he engaged in a scheme to sell fraudulent investments in Ugandan and Ethiopian bio-diesel fuel refineries; an African wind turbine power generation company; and a Mexican real estate development company. To date, the Defendant has only paid $47,044 in restitution to his three victims in this case. *Id.* The Defendant initiated his fraud scheme in subject case before he even completed his term of probation in this prior Montgomery County Common Pleas Court case. *Id. (See also the charged time frame appearing in Count 1 of subject Indictment).*

**B.     18 U.S.C. § 3553(a) (2):  The need for the sentence imposed to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from future crimes of the defendant; and (D) to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner.**

District Courts are required to impose a sentence that affords adequate deterrence, both specific and general. See United States v. Camiscione, 592 F.3d 823, 834 (6th Cir. 2010). "Consideration of general deterrence is particularly important where the district court varies substantially from Guidelines. *See, e.g.,* United States v. Aleo, 681 F.3d 290, 300 (6th Cir. 2012) (explaining that the greater the variance, the more compelling the justification based upon § 3553(a) factors must be). Where a district court views a particular crime's seriousness appears at odds with that of Congress and the Sentencing Commission, it is required to explain how its sentence affords adequate general deterrence. United States v. Musgrave, 2014 FED App. 0168P at **8 (6th Cir. July 31, 2014); Camiscione, 591 F.3d at 834.

8

**C.    18 U.S.C. § 3553(a)(3) and (4):  Kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines.**

The District Court is required to consider the sentencing range established by the Guidelines.  Although advisory, the Guidelines remain "the starting point and initial benchmark" in determining whether a particular sentence is "sufficient but not greater than necessary" to achieve the purposes of sentencing.  Gall v. United States, 552 U.S. 38 at 49 (2007); United States v. Bistline, (Bistline II), 720 F.3d 631, 633 (6th Cir. 2013).

In subject case, the Probation Officer has recommended an advisory Guideline sentence of 168 months.  Considering all the underlying facts and circumstances of this case and the various 18 U.S.C. § 3553(a) factors of sentencing, the United States concurs that a total sentence of 168 months is sufficient but not greater than necessary to achieve the statutory goals and purposes of punishment.

**D.    18 U.S.C. § 3553(a) (5)   Any pertinent policy statement issued by the Sentencing Commission . . . subject to any amendments made to such policy statement by act of Congress.**

None.

**E.    18 U.S.C. § 3553(a) (6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

18 U.S.C. § 3553(a) (6) lists as one of the factors the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  The Sixth Circuit in United States v. Simmons, 501 F.3d 620, 623 (6th Cir. 2007) explained that 18 U.S.C. 3553(a)(6) is a requirement of the need to avoid unwarranted sentencing disparities concerns *nation-wide* disparities.  The Court went on to describe the Guideline range as "good evidence of the national standard."  Id.

## CONCLUSION

The United States respectfully asks that this Court impose a sentence of **168 months** based upon the Defendant's net offense level of 31/CHC III. The sentence should additionally impose restitution in the amount of $854,588.78 pursuant to 18 U.S.C. § 3663A.

This is the precise sentence recommended by the U.S. Probation Officer in her PSR. Imposition of such a sentence is deemed "sufficient, but not greater than necessary" to reflect the seriousness of the offense committed, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public and avoid disparity in sentencing. As such, the United States respectfully recommends this Honorable Court impose this sentence upon the Defendant in this case.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney


s/Dwight K. Keller
DWIGHT K. KELLER (0074533)
Assistant United States Attorney
Attorney for Plaintiff
200 West Second Street, Suite 600
Dayton, Ohio 45402
Office: (937) 225-2910
Fax: (937) 225-2564

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sentencing Memorandum was electronically served this 23rd day of February 2023, upon all the defense counsel of record.

s/Dwight K. Keller
DWIGHT K. KELLER (0074533)
Assistant United States Attorney

10